UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**Shelter Mutual Insurance Co.**             Civil Action No. 6:10-cv-00651

versus                                       Judge Tucker L. Melançon

**Rimkus Consulting Group, Inc. of
Louisiana, et al**                           Magistrate Judge C. Michael Hill

### MEMORANDUM RULING AND ORDER

Before the Court is a Motion To Remand filed by plaintiff, Shelter Mutual Insurance Company ("Shelter"), [Rec. Doc. 20], defendants' Opposition thereto [Rec. Doc. 26], Shelter's Revised Exhibit D [Rec. Doc. 32], defendants' Response in Opposition thereto [Rec. Doc. 34], Shelter's First Supplemental and Amended Memorandum in support of the Motion to Remand [Rec. Doc. 36] and Shelter's Opposition thereto [Rec. Doc. 37]. For the reasons that follow, the Court will grant plaintiff's motion.

### I. BACKGROUND

This is a suit for professional engineering negligence/malpractice filed by Shelter Mutual Insurance Company ("Shelter") against Rimkus Consulting Group, Inc. of Louisiana and Craig D. Rogers (collectively "defendants" or "Rimkus and Rogers"). Rimkus is a professional engineering consulting firm licensed to practice as a "Class C" engineering firm withe the Louisiana Professional Engineering and Land Surveying Board. *R. 1-2, Petition,* ¶ 2. Craig D. Rogers is a registered Professional Engineer with the Louisiana Professional Engineering and Land Surveying Board who was acting within the course and scope of his employment with Rimkus at the time of the negligence Shelter alleges caused it to be

damaged. Shelter provided a property and casualty insurance policy to Patriot Building Corporation ("Patriot") covering, among other things, Patriot's office building. *Id,* ¶ *3.* Patriot brought suit against Shelter for cost and/or expenses associated with weather related damage to its building. *Id,* ¶ *4.* In 2002, Shelter retained Rimkus and Rogers to serve as consultants and/or expert witnesses to evaluate the claim. *Id,* ¶ *5.* From 2003 through 2006, Rogers made several visits to the site of the alleged damage and rendered a series of reports, written and verbal, to Shelter, upon which Shelter relied in making decisions as to payment of the claim ("the Rimkus Reports"). *Id,* ¶ *6.* Based on the Rimkus Reports, Shelter denied certain portions of the claim on the basis that such damage was not caused by or related to the weather incident in question. *Id,* ¶ *7.* Subsequently, Rogers conceded to Shelter that his reports were erroneous and were withdrawn by defendants. *Id.* Shelter alleges that the erroneous opinion and its subsequent withdrawal subjected Shelter to significant additional liability for bad faith damages as well as additional costs, expenses and fees associated with further litigation based upon the erroneous opinion.

Shelter filed this action on December 11, 2009 in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana. ®. *1, Exh. A).* The Petition was served on Rimkus on December 21, 2009 and on Rogers on December 22, 2009. *R. 20, Exh. B, C.* On April 20, 2010, defendants filed a Notice of Removal of the action to this Court. *R. 1.* In its motion to remand, Shelter contends that defendants filed their Notice of Removal more than thirty (30) days after this action was filed and therefore the removal is untimely.

### *III. LAW AND ARGUMENT*

District courts have original jurisdiction of all civil actions where the amount in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1). It is undisputed that diversity exists between the plaintiff and defendants, (*Notice of Removal* ¶ I - III), therefore, the sole issue before the Court is whether the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

It is well settled that the removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists. However, the Fifth Circuit has applied different standards of proof, depending upon whether the complaint prays for a specific amount of damages. *Allen v. R & H Oil and Gas Co.*, 63 F.3d 1326 (5th Cir.1995). Where the complaint alleges entitlement to damages which exceed the jurisdictional limits of the court, the court may refuse jurisdiction only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount. *St. Paul Mercury Indemnity Co. v. Red Cab. Co.*, 303 U.S. 283 (1938). In Louisiana, plaintiffs are prohibited by state law from specifying the amount of damages sought. La.Code Civ. P., Art. 893. In such a situation, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *De Aguilar v. Boeing "De Aguilar I"*, 11 F.3d 55, 58 (5th Cir.1993). The defendant may make this showing in either of two ways: (1) by demonstrating that it is "facially apparent" from the complaint that the claims are likely above $75,000, or (2) "by setting forth the facts in controversy-preferably in the removal petition, but sometimes by affidavit-that support a finding of the requisite amount." *Allen*, 63 F.3d at 1335.

Defendants have thirty days from receipt of the initial pleading in which to remove

a case from state court to federal court. 28 U.S.C. § 1446(b)[1]. This general rule applies when the pleading "affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir.1992). If the pleading is silent regarding damages, or if the pleading is not removable, the defendant may remove the case at the time the defendant receives notice through "an amended pleading, motion, order or other paper from which it may be ascertained that the case is one which is or has become removable ...." § 1446(b). This is an objective standard, adopted to "promote[ ] certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know." *Chapman*, 969 F.2d at 163 . Defendants are not required to estimate damages on their own or remove cases automatically, gambling on whether or not the amount-in-controversy will be met so as not to forfeit their right to have a case heard by a federal court. *See id.* (holding that, in the context of an amount in controversy dispute, a defendant's subjective knowledge that the claims are worth more than the jurisdictional amount does not constitute "other paper" triggering the 30 day time period for removal). "Other paper" is continually defined as "the voluntary act of a

---

[1] The timing of a removal is fixed by 28 U.S.C.A. §1446(b), which provides in pertinent part:
   The notice of removal shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based...

   If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable ....

28 U.S.C. § 1446(b).

plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction." *Addo v. Globe Life and Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir.2000).

Defendants contend that because the Petition does not affirmatively plead a specific amount, it failed to put defendants on notice that the amount in controversy exceeded $75,000, exclusive of interest and costs. Defendants further contend that they were not aware that the amount in controversy exceeded $75,000, exclusive of interest and costs, until counsel for defendants received an email from counsel for Shelter on April 19, 2010. The email stated the following:

> "David, I will send a letter, but you, & in turn RIMKUS, have long been aware of what Shelter's position is re: its damages. See the correspondence of Ms. Davis dated 11/11/08 directed to you on behalf of RIMKUS. It has always been contended since pre-suit that damages exceeded $75,000. Additionally the offer of RIMKUS @ mediation exceeded $75,000. Tommy."

*R. 1-4, Exhibit C, 4-19-10 email from counsel for Shelter to counsel for defendants.* Defendants maintain that the email satisfies the requirement of "other paper" as provided in the second paragraph of § 1446(b), and as such, the time for removal commenced to run on April 19, 2010. As the Notice of Removal was filed on April 20, 2010, defendants assert that removal is timely.

Shelter argues that the facts establish defendants were well aware that Shelter was seeking damages in excess of $75,000, exclusive of interest and costs, long before the email was sent on April 19, 2010. It is undisputed that Shelter retained defendants to perform a report on the cause and extent of damages to the property of its insured, Patriot,

as well as an estimate for repair of the Patriot property. It is also undisputed that after the Rimkus reports were issued, Shelter relied on the reports in denying certain of Patriot's claims for damages and in reducing the amount tendered to Patriot. The August 11, 2010 affidavit of Vickie Davis, Shelter's litigation attorney who worked on the litigation involving Patriot, states that "Rimkus [and Rogers] had repeatedly analyzed, evaluated, and rendered opinions that required Shelter to tender approximately $143,0000.00 to its insured [Patriot]."[2] *R.36-6, Aff. Of Davis, Exh. G.* After Patriot filed suit against Shelter for additional insurance benefits from underpayment of damages, the two companies retained Belfor Property Restoration, an independent, third party, to prepare an estimate and report on the amount of damage to the Patriot property. In a letter from Belfor to Rogers, Belfor provided a bid for the storm related scope of work which totaled $553,929.46. *R. 20, Exh. E, Belfor Report, p.1.* Rogers reviewed the Belfor estimate and report and in a letter dated February 25, 2008 advised counsel for Shelter that the amount estimated by Belfor was correct and that he was mistaken in the calculations he had made in the Rimkus reports. *Id., p.3.* Rogers' letter stated, "[d]ue to the intricacies of the work required to replace the spandrel gaskets between the two floors, this portion of the work accounts for $360,872. The remaining general contractor work accounts for $193,057." *Id.* Thereafter, on November 11, 2008, Vickie Davis sent an email to Rimkus's attorney making a "formal demand" on Rimkus for $797,000, explaining that "Shelter ultimately resolved the claim by paying an additional $797,000... in addition to previous

---

[2] The record indicates that Rogers and Rimkus submitted reports to Shelter dated May 20, 2003, September 1, 2004 and January 30, 2006, increasing the amount of Patriot's damages in each report. *Id., Exh. D 1-4.*

unconditional tenders totalling [sic] $114, 484.56." *Id., Exh. F, 11/11/08 email from Shelter to counsel for defendants.*

Defendants rely on *Chapman*, 969 F.2d 160, as adopting a bright line rule requiring the plaintiff, if he wishes the thirty-day time period to run from the defendants receipt of the initial pleading, to place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount. *Id.* at 163. In *Chapman*, the Fifth Circuit set out that this rule "promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know" and that "the better policy is to focus the parties' and the court's attention on what the initial pleading sets forth ..." *Id.* Ten years following the holding in *Chapman*, in *Bosky v. Kroger Texas, LP*, the Fifth Circuit, in dicta, explained that the court had found "that specific damage estimates that are less than the minimum jurisdictional amount, when combined with other unspecified damage claims, can provide sufficient notice that an action [under the first paragraph of 28 U.S.C. § 1446(b)] is removable so as to trigger the time limit for filing a notice of removal." *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir.2002) *citing Marcel v. Pool Co.*, 5 F.3d 81, 82-85 (5th Cir.1993) and *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408-12 (5th Cir.1995). Also, since *Chapman*, some district courts in the Fifth Circuit have found that *Chapman* does not mandate "rigid adherence to some kind of formalistic pleading requirement...." Rather, they state that *Chapman* "merely requires that a state court complaint be sufficiently definite on its face to enable defendants to ascertain removability without reliance on speculation or conjecture." *See e.g., Wise v. Bayer*, 281 F.Supp.2d 878, 884 (W.D.La.,2003) (J. Drell);

*Evett v. Consolidated Freightways Corp.*, 110 F.Supp.2d 510, 513 (E.D.Tex.,2000).

The foregoing jurisprudence supports Shelter's position that defendants' removal was untimely. The record establishes that defendants had objective knowledge that Shelter's claims against them exceeded $75,000, exclusive of interest and costs, when they were served with the Petition. Paragraph 7 of plaintiff's Petition states that defendants' "erroneous opinion and subsequent withdrawal of same subjected Shelter to significant additional liability for bad faith damages as well as additional cost, expenses and fees associated with further litigation based upon the erroneous opinion." *R. 1-2, ¶ 7.* The Petition further states that the damages at issue in the case were caused by the "fault and/or negligence" of Craig Rogers and Rimkus "in rendering an opinion to and/or providing written or verbal reports to Shelter which fell below the standard of care practiced by professional engineers in this area." *Id., ¶¶ 8, 9.* The Petition seeks damages from defendants for "all sums as are reasonable under the premises, including but not necessarily limited to, increased costs of claim settlement due to potential bad faith damages, litigation costs or expenses from the time of initial report through settlement of the matter and increased costs of adjustment due to increased labor/material costs." *Id., ¶10.*

As provided by the affidavit of Shelter's litigation counsel, Vickie Davis, Shelter relied exclusively on the expert opinions of Rimkus and Rogers in tendering approximately $143,000.00 to its insured, Patriot. Hence, when Rogers conceded to Shelter after reading the Belfor evaluation that his estimates were erroneous and that Shelter should have paid Patriot $553,929.46, defendants had objective knowledge that

they had advised Shelter to pay Patriot at least $75,000 less than the actual amount of plaintiff's claim. Although the Petition did not specify a dollar amount, defendants knew that, at a minimum, Shelter was claiming as damages the amount it had underpaid Patriot because of the erroneous Rimkus reports, and that this law suit was based entirely on that claim.

## IV. CONCLUSION

Defendants failed to timely remove this case under the provisions of 28 U.S.C.A. §1446(b). Under the strict construction standard of the removal statutes, defendants were aware of the amount in controversy the day this suit was filed. Accordingly,

ORDERED that plaintiff's Motion To Remand [Rec. Doc. 20] is GRANTED and this action is hereby REMANDED to the Fifteenth Judicial District for the Parish of Lafayette, State of Louisiana. It is

FURTHER ORDERED that the Clerk of this Court mail a certified copy of this Order of Remand to the Clerk of Court for the Fifteenth Judicial District, Parish of Lafayette, State of Louisiana.

THUS DONE AND SIGNED at Lafayette, Louisiana this 20th day of August, 2010.

Tucker L. Melançon
UNITED STATES DISTRICT JUDGE